UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

NOV 18 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-21-GWU

RICK W. YOUNG,                                              PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Young

Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  See 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

Young

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Young

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.  If there is, we then examine:   (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment.  The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987).  Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Young

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Young

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments.   Varley  v. Secretary of Health and Human

Services, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Rick W. Young, was found by an Administrative Law Judge (ALJ)

to  have  an  unspecified  combination  of  "severe"  impairments.     (Tr.  25).

Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ

determined that Mr. Young retained the residual functional capacity to perform a

significant number of jobs existing in the economy and, therefore, was not entitled

to benefits.  (Tr. 25-7).  The Appeals Council declined to review, and this action

followed.

At the administrative hearing, the ALJ had asked the VE whether a person of

the plaintiff's age of 42 years, high school equivalent education, and work experience

as a truck driver and swimming pool installer could perform any jobs if he were

limited  to  "light"  level  exertion,  and  also  had  the  following  non-exertional

impairments.  (Tr. 212).  He: (1) could stand and walk a total of two hours in an eight-

hour day, and sit with normal breaks a total of about six hours in an eight-hour day;

7

(2) could only push and pull foot controls occasionally with his left leg; (3) could not climb ladders, ropes, or scaffolds; (4) could occasionally climb ramps and stairs, stoop, crawl, and balance; and (5) could not work around dangerous machinery or unprotected heights, or perform commercial driving.  (Tr. 212-13).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 213-14).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Mr. Young alleged disability beginning May 1, 2001 due to a left hip joint replacement, Insulin-dependent diabetes, and seizures. (Tr. 61, 186, 191-2). He testified that his hip joint replacement had actually taken place after a motor vehicle accident in approximately December, 1981, after which he had returned to work, and that he had undergone a "revision" of the joint in 1992 and also returned to work until 2001. (Tr. 186, 193). He had stopped installing swimming pools after 1995 because of having "seizures," which he felt were the result of being out in the sun. (Tr. 190). Afterwards, he was an over-the-road truck driver and still had his commercial driver's license, although he was an Insulin-dependent diabetic. (Tr. 189). Later, he testified that he thought the seizures were the result of diabetes, and had started in January, 1995. (Tr. 201). He described his most serious problem as his hip, stating that his

8

left leg would give out easily. (Tr. 193-4). He could walk 100 yards, but used a cane and at one time had been using crutches. (Tr. 194-5). The cane and the crutches were his idea, not a physician's, and Mr. Young stated that he did not use them to prevent falling, but rather to take weight off the hip joint, which was painful. (Tr. 194-5). Sitting did not make his pain worse, although it caused some stiffness. (Tr. 196). He thought that he could probably alternate sitting and standing all day, although he had not ever tried it. (Id.). Mr. Young also testified that he could probably lift 100 pounds as long as he could put all of his weight on his good leg, but only 15 pounds comfortably. (Tr. 193, 197).

Remote 1981 medical records from a Dr. Lane indicate that the plaintiff had been in a serious motor vehicle accident in April, 1980, and had been under the care of Dr. Kibler for chondrolysis of the left hip. (Tr. 129). X-rays showed severe narrowing of left hip, and the left calf had scar tissue, which Dr. Lane did not think was serious. (Id.). Apparently he returned to work, and in 1983, the plaintiff was given clearance to return to work without restrictions after being off briefly due to a foot injury. (Id.).

In 1991, Dr. B. J. Parson of the same office saw Mr. Young, with complaints of left hip pain, and x-rays showed that his total hip replacement had "subsided down" and was probably loose. (Tr. 128). Dr. Parson opined that Mr. Young needed a "revision," and should see Dr. Nichols. (Id.). There is no evidence from Dr.

9

Nichols in the transcript, and the plaintiff testified that his hip improved without the revision, so he started back to work. (Tr. 193).

In 1997, the plaintiff made office visits to Dr. Stephen Kiteck for an evaluation of diabetes, at which time the plaintiff stated that he had been taking Insulin for number of years and testing his blood sugar at home, where it had been running in the normal range. (Tr. 122). The examination was unremarkable except for unspecified "evidence of injuries to the musculoskeletal system." (Id.). Almost five years later, after the 2001 alleged onset date, the plaintiff saw Dr. Kiteck again, indicating that he had been adjusting his Insulin dose on his own. (Id.). Mr. Young was complaining of pain and discomfort in the left hip, but Dr. Kiteck's examination was normal except for a generalized soreness in the left hip. He advised his patient to keep an appointment with an orthopedic surgeon and gave him information on Insulin control. (Id.). No functional restrictions were suggested.

Mr. Young also had seen a Dr. Kovacs in 1999 for a painful left knee after stepping in a hole. (Tr. 176). Dr. Kovacs indicated that the plaintiff's left hip replacement had subsided into the femur and needed to be revised, and Mr. Young stated that he was thinking about it, but he was continuing to work. He was having no problem using the clutch on his truck, although weight-bearing was painful. (Id.). The examination showed some diffuse swelling but no effusion or ligament laxity, and an x-ray of the left knee was normal. (Id.).

Young

Dr. Howard Podolsky conducted a consultative physical examination of the plaintiff in October, 2001, and reviewed the the office notes from Doctors Lane and Parson. He was also aware of the plaintiff's Insulin-dependent diabetes. Mr. Young stated that he was able to operate a motor vehicle short distances, was able to clothe and feed himself without difficulty, and did some light cooking and cleaning. (Id.). Dr. Podolsky's examination showed 20/50 vision and no hypertensive or diabetic changes. (Tr. 132). Mr. Young ambulated with an antalgic gait using a cane and favoring the right leg, but had normal sensation, muscle strength, and reflexes. (Id.). The range of motion of the left hip was somewhat diminished in comparison with the right, but the range of motion of all other extremities was otherwise completely normal. (Tr. 132-3). Dr. Podolsky described the left hip range of motion as "moderately diminished." (Tr. 133).

In February, 2002, also after the alleged onset date, Dr. Parson examined Mr. Young for bilateral foot pain and left hip pain. (Tr. 127). The plaintiff's neurovascular and neurosensory evaluations were normal, as was his range of motion. X-rays, however, showed an old total hip replacement which appeared to be loose, and Dr. Parson referred the plaintiff for a probable reconstruction and prescribed pain medication. (Id.). No functional restrictions were given.

Two non-examining state agency physicians reviewed most of the record and concluded that the plaintiff could perform light level exertion, with non-exertional

11

restrictions consistent with the factors given in the ALJ's hypothetical question. (Tr. 134-53).

On appeal, the plaintiff's primary argument is that he meets the Commissioner's Listing of Impairments (LOI) Sections 1.03 and 1.06.  LOI 1.03 provides for disability if an individual has had "reconstructive surgery or surgical arthrodesis of a major weight-bearing joint," and was not able to return to effective ambulation within 12 months of onset. LOI 1.06 concerns fracture of the femur, tibia, pelvis, or one or more of the tarsal bones, with a solid union not evident on appropriate x-rays, as well as "an inability to ambulate effectively."  "Effective ambulation" is defined in LOI 1.00B2b as inability to "sustain a reasonable walking pace over a sufficient distance to be able to carry out the activities of daily living," including the ability to travel without companion assistance to and from a place of employment or school.  As Dr. Podolsky noted, the plaintiff reported that he was able to drive for short distances and take care of his personal needs as well as do light house work.  (Tr. 131).  The plaintiff also testified at the administrative hearing that he was not in danger of falling without a cane, went to the grocery store, sometimes washed dishes, swept, worked on cars when necessary and mowed the yard in the summer, and liked to fish and hunt.  (Tr. 203-4).  He was able to fish and hunt without walking a great distance, but had been able to kill a deer in 2003.  (Tr. 204).

Young

Therefore, substantial evidence supports the ALJ's finding that the plaintiff did not meet either Listing.

The plaintiff's other argument is that the ALJ did not properly consider his complaints of pain and his impairments in combination, but an examination of the ALJ's decision shows that it was adequate in this regard. (Tr. 21-3).

The decision will be affirmed.

This the ___/8___ day of November, 2005.

G. WIX UNTHANK
SENIOR JUDGE

13